HARBISON, APPELLANT, *v.* HARBISON ET AL., APPELLEES.

(No. 2718—Decided December 3, 1962.)

*Messrs. Pickrel, Schaeffer & Ebeling,* and *Mr. Wendell D. Sellers,* for appellant.
*Messrs. Holzfaster, Hoefling & Cecil,* for appellees.

Kerns, J.   This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Montgomery County, Ohio.

On March 30, 1960, the plaintiff, Gertrude B. Harbison, filed an amended petition which explains the nature of the present controversy and sets forth four causes of action as follows:

First Cause Of Action

"Now comes the plaintiff and for her first cause of action says that on the 21st day of August, 1952, by consideration of the Superior Court of the state of California in and for the County of Los Angeles, the same being a court of general jurisdiction, in a divorce action therein pending, being case No. SMD 9552, the parties in this action being likewise the parties in that action, the plaintiff was awarded an interlocutory judgment of divorce from the defendant Edward F. Harbison; and in said divorce judgment it was ordered, adjudged and decreed by said court that the defendant Edward F. Harbison pay to plaintiff for her support and maintenance the sum of $200.00 per month, payable on the 15th day of each and every month, commencing as of the 15th day of September, 1951; that defendant Edward F. Harbison pay to plaintiff for the support, education and maintenance of the minor son of the parties, Stephen Franklin Harbison, the sum of $125.00 per month, on the 15th day of each and every month, commencing as of December 15, 1951; and that defendant Edward F. Harbison be responsible for extraordinary medical expenses incurred for the said minor son; that on the 7th day of October, 1953, by

consideration of said court, plaintiff was awarded a final judgment of divorce from defendant Edward F. Harbison in said cause and the aforesaid provisions for alimony and support, and for child support, education, maintenance and extraordinary medical expenses were made binding on the parties.

"Plaintiff further alleges that defendant Edward F. Harbison has failed to pay to plaintiff the aforesaid sums as ordered, adjudged and decreed by said court in said interlocutory and final judgments as subsequently modified, and that on October 29, 1959, said court ordered, adjudged and decreed that there was due and payable to plaintiff from defendant Edward F. Harbison the sum of $4,504.23 under said interlocutory and final judgments as modified.

"Plaintiff further says that said California interlocutory and final judgments, as modified, are still in full force and effect, unreversed, and unpaid; that copies of said interlocutory and final judgments and order of October 29, 1959, are hereto attached, filed herewith, and marked exhibits 'A', 'B', and 'C', respectively; and there is due plaintiff from defendant Edward F. Harbison the sum of $4,504.23, with interest thereon at 6 per cent per annum from the 29th day of October, 1959."

Second Cause of Action

"Plaintiff for her second cause of action says that on or about the 24th day of June, 1955, defendant Edward F. Harbison, while indebted to plaintiff under the terms of the aforementioned interlocutory and final judgments, conveyed to the defendant, Maureen Harbison, his wife, with intent to hinder, delay and defraud plaintiff and other creditors, all his estate, right, title and interest in and to the following-described real estate, to-wit:

"Situate in the Township of Washington, County of Montgomery and state of Ohio, and being Lot Numbered 127, Woodbourne Plat, Section 4, of part of Section 33, Township 2, Range 6 MRS, as shown by the recorded plat of said subdivision in Volume GG of Maps, page 7, Montgomery County records.

"Plaintiff says that said conveyance is recorded in Deed Book 1709, page 435, of the Deed Records of Montgomery County, Ohio.

"Plaintiff further says that said conveyance was accepted

and received by the defendant Maureen Harbison with knowledge of said fraud and with the intent to aid the said defendant Edward F. Harbison in the intent to hinder, delay, and defraud the plaintiff and other creditors; that said conveyance was made without consideration, except the stated consideration of $1.00; that said conveyance is void and of no force and effect as against the plaintiff and other creditors of said defendant Edward F. Harbison.

"Plaintiff further says that the defendant, Prudential Insurance Company of America, has a mortgage lien on the aforementioned real property by reason of a mortgage executed and delivered to it by the defendants, Edward F. Harbison and Maureen Harbison, on the 8th day of June, 1955, which mortgage is recorded in Mortgage Book 1655, page 391, of the mortgage records of Montgomery County, Ohio."

Third Cause Of Action

"Plaintiff for her third cause of action says that during the month of July, 1959, while indebted to plaintiff under the terms of the aforementional interlocutory and final judgments, defendant Edward F. Harbison caused the defendant, Air Technical Associates, Inc., to be incorporated in the state of Ohio, as a domestic corporation for profit, corporation No. 282296, with its principal office in Oakwood, Ohio.

"Plaintiff further says that she has reason to believe, does believe, and therefore alleges, that the defendant Maureen Harbison owns an undertermined number of shares of stock in said corporation, that the defendant Edward F. Harbison is and has been the real and equitable owner of said stock; that said stock was taken in the name of defendant Maureen Harbison, the wife of Edward F. Harbison, to be held by her for the use and benefit of her husband, without consideration, and under an agreement with him for the purpose of defrauding this creditor and other creditors and to further prevent the collection of debts due by him to this plaintiff and other creditors."

Fourth Cause Of Action

"Plaintiff for her fourth cause of action reavers that during the month of July, 1959, while indebted to plaintiff under the terms and conditions of the aforementioned interlocutory and final judgment, defendant Edward F. Harbison caused the defendant, Air Technical Associates, Inc., to be incorporated

in the state of Ohio, as a domestic corporation for profit, corporation No. 282296, with its principal office in Oakwood, Ohio. Plaintiff further says that she has reason to believe, does believe, and therefore alleges that said defendant corporation is a sham and was organized by the defendant Edward F. Harbison with the intent to hinder, delay and defeat plaintiff and other creditors; that the chief asset of said corporation consists of personal services rendered by the defendant, Edward F. Harbison, for various clients; that defendant Edward F. Harbison has made agreements with several clients in the name of said corporation, with the intent of placing said clients, as garnishees, beyond proceedings in aid of execution by this judgment creditor, the plaintiff, and other creditors.''

An answer to the amended petition was filed by defendants Edward F. Harbison and Maureen Harbison admitting the divorce of plaintiff and defendant Edward F. Harbison, the conveyance of real estate from defendant Edward F. Harbison to defendant Maureen Harbison, and the incorporation of Air Technical Associates, Inc., but denying that the real estate was conveyed by Edward F. Harbison or accepted by Maureen Harbison with the intent to hinder, delay and defraud plaintiff and also denying that the corporation was a sham and that stock was issued to defraud the plaintiff. An answer to the amended petition was also filed by the defendant corporation admitting its corporate existence but denying that the corporation was a sham or organized to hinder, delay or defraud plaintiff. An answer was also filed by defendant Prudential Insurance Co. of America, setting forth its mortgage lien on the real estate described in the second cause of action of the amended petition. A reply to the answer of Prudential was filed by the plaintiff admitting the validity and priority of Prudential's lien. The parties stipulated judgment against defendant Edward F. Harbison on the first cause of action in the amount of four thousand forty-four dollars and 77/100 ($4,044.77), and the second, third and fourth causes of action were submitted to the court upon the pleadings and the evidence. The trial court found in favor of the defendants and against the plaintiff on all three causes of action.

By stipulation of the parties, the case has been submitted to this court upon a transcript of the evidence taken in the Common Pleas Court.

The evidence bearing upon the second cause of action discloses that the home now occupied by defendants Edward and Maureen Harbison was purchased in June 1955, for $28,500. The down payment on the home at the time of purchase was $8,500. Of this amount, $7,500 was borrowed from Maureen Harbison's father and $1,000 was borrowed from Edward Harbison's father. The home was mortgaged for the balance of $20,000 to the Prudential Insurance Co. of America. In the original deed to the property, both Edward and Maureen Harbison were named as grantees. This deed was recorded on June 8, 1955. On the same day, June 8, 1955, a mortgage was executed by both Edward and Maureen Harbison in favor of the Prudential Insurance Co. of America, and the answer filed by Prudential in the present case indicates that both are still liable for the balance due on the mortgage.

Thereafter, by deed recorded on June 28, 1955, Edward Harbison deeded his undivided one-half interest in the property to his wife without consideration.

In explaining the subsequent transfer within twenty days, the defendant, Edward Harbison, testified that the original deed to him and his wife was drawn by mistake and that it was intended from the start that the deed be drawn in the name of Maureen Harbison as sole owner.

There is some conflict in the evidence as to whether an arrearge existed in favor of the plaintiff at the time the undivided one-half interest in the real estate was transferred to the defendant Maureen Harbison.

The defendant Edward Harbison testified that "my record indicates that I was not in arrears," whereas the plaintiff, Gertrude Harbison, testified that $775 was then due from her former husband. At any rate, the record is clear that defendant Edward Harbison had encountered difficulty in his efforts to maintain two families. In fact, on September 15, 1954, or less than a year before the disputed transfer of the real estate, an arrearage of $2,532.66 had been settled between the parties for $600.00.

There is also evidence in the record that all payments in satisfaction of the loans from the defendants' fathers and all payments on the mortgage lien, whether paid by Maureen Har-

bison or Edward Harbison, actually came from moneys earned by the defendant Edward Harbison.

Upon these facts, without any further developments, we would be disposed to agree that there is ample authority to support a conclusion that the transfer of the real estate in the present case was constructively fraudulent as to the plaintiff, Gertrude Harbison.

But here, the record discloses further that the plaintiff herself, by a subsequent agreement, substantially altered her equitable position. According to her testimony, she acquired actual knowledge of the transfer of the real estate in May 1956. Thereafter, on October 21, 1957, she and Edward Harbison agreed to settle all existing arrearages, including any amount which may have been due at the time of the conveyance of the real estate, for the sum of $1,323.29. By entering into this agreement with complete knowledge of the facts and circumstances then existing, the plaintiff effectively dissolved all the elements upon which constructive fraud might thereafter be based. At that time, the plaintiff was chargeable with knowledge of the disputed conveyance. She knew of any obligations existing in her favor which accrued prior to the time of the conveyance. And she was aware of the history of arrearages which had accumulated from time to time in previous years. Under such circumstances, we cannot shelve the plaintiff's forbearance to assert any right or interest based upon that knowledge without rendering ineffective the obvious intent and purpose of the stipulation which she voluntarily entered into on October 21, 1957. After the settlement on that date, the slate was clean so far as the parties to the agreement were concerned. Arrearages had been settled, and no valid cause of action remained. Any pre-existing equities were absorbed by the agreement. At that point, the conveyance was no longer subject to attack by the plaintiff. Nor in our opinion did any equities persist which might have been nurtured into a cause of action by subsequent events and changed conditions. For this reason, we find for the defendant and against the plaintiff as to the second cause of action.

With reference to the third and fourth causes of action, the evidence discloses that defendant Edward Harbison was found to be in arrears in alimony and support payments in the sum

of $3,732.37 on June 25, 1959. He admitted that for a period from February 1959, until the court order of June 1959, he had been negotiating with plaintiff, Gertrude Harbison, concerning delinquencies, and that he could anticipate that an order of arrearages would be made.

On July 1, 1959, the defendant Air Technical Associates, Inc., was incorporated. The officers of the corporation are Edward Harbison, president; John J. Monroe, vice-president (Mr. Monroe is Maureen Harbison's father); and Maureen Harbison, secretary-treasurer. Five shares of stock with a par value of $100 per share were issued by the corporation, of which defendant Maureen Harbison owns three shares and her father, John Monroe, owns the other two shares. The office of the corporation is located in the home of defendants Edward and Maureen Harbison.

The only real asset of the corporation, other than the paid-in capital of $500, certain office equipment valued at about $400, and two motor vehicles, are the personal services of the defendant Edward Harbison as a manufacturers' representative. In this regard, Mr. Harbison testified as follows:

"Q. Now you say that you are president of Air Technical Associates, Inc. Now that is your main occupation, is that right? A. That is correct.

"Q. Now prior to assuming the presidency of this corporation, what was your occupation? A. I was a manufacturer's representative as a self-employed individual.

"Q. Would you tell the court in a few words just what a manufacturer's representative is? A. A manufacturer's represensative, particularly in the area that I am involved in, mainly doing work with the Defense Department; companies who do not have sufficient people to establish a permanent office, staffed with permanent employees engage the services of a supposedly competent individual to look out for their interests as well as speaking for that company. It includes services, liaison activities and routine matters that follow up in connection with either potential business or current business for that company.

"Q. Will you tell the court the business of Air Technical Associates, Inc.? A. The business of Air Technical Associates, Inc. is to render its services to clients under an agreement basis.

"Q. In other words, is it not true, Mr. Harbison, that this corporation of which you are president, is performing the same type of services that you had done as an individual? A. Partially. There are no strings on the corporation. We can have as many employees as we desire in the corporation.

"Q. I know but is it not true that that is the main and only business of the corporation—to represent contractors with the United States government? A. That is right.

"Q. That is right. A. I will qualify that. That is not the only purpose. My clients also do business with commercial organizations within a geographical area.

"Q. But Air Technical Associates, Inc. acts as a manufacturer's representative, is that not so? A. That is right.

"Q. That is the main purpose of the corporation? A. Yes."

The defendant Edward Harbison testified further that the defendant Air Technical Associates, Inc., now has as clients the following corporations, which he represented individually prior to the incorporation: Kellett Aircraft, University of Denver, Weber Aircraft and Gruman Aircraft. At the time of incorporation, Mr. Harbison was receiving from the clients which he represented individually an income of approximately $1,875 per month whereas defendant Maureen Harbison, prior to her marriage, had been an executive secretary, receiving approximately $65 per week. Since incorporation, defendant Maureen Harbison has received a salary from the corporation of $1,300 per month whereas the defendant Edward Harbison has received a salary of $50 per week. It also appears from the evidence that defendant Maureen Harbison, in addition to her position with the corporation, is responsible for the care of four young children, and provides from her salary for the financial support of the entire family. The third member of the corporation, Maureen Harbison's father, serves as a "consultant" and receives no salary. There is also evidence in the record that defendant Edward Harbison knew that a corporation was not responsible, as such, for his personal obligations.

A further resume of all of the evidence hardly seems necessary. We have carefully re-examined the uncontroverted testimony of the defendants Edward and Maureen Harbison themselves, and in extending to their testimony the maximum credulity of which this court is humanly capable, we cannot discount

the contention that defendant Air Technical Associates, Inc., as presently composed, is a sham and a fraud to defeat the legal claims of the plaintiff Gertrude Harbison. On the contrary, a reasonable assessment of the evidence lends itself to but one conclusion—that the corporation is Edward Harbison—nothing more and nothing less. For this reason, the plaintiff is entitled to equitable relief which will give substance to previous court orders and efficacy to her judgment against the defendant Edward Harbison.

Accordingly, in summarizing our conclusions upon each of the causes of action set forth in the plaintiff's amended petition, we find as follows:

(1) As to the first cause of action, judgment will be entered for the plaintiff and against the defendant in the amount of $4,044.77, as stipulated by the parties.

(2) As to the second cause of action, judgment will be entered for the defendants and against the plaintiff.

(3) As to the third cause of action, a constructive trust in favor of Edward Harbison will be impressed upon any shares of stock in defendant corporation which are now owned by defendant Maureen Harbison and such shares will be made subject to the legal claims of Gertrude Harbison against Edward W. Harbison.

(4) As to the fourth cause of action, a constructive trust in favor of Edward Harbison will be impressed upon any interest in contracts now held by defendant corporation, which were formerly held by defendant Edward W. Harbison as an individual at the time of incorporation, and such interest will be made subject to the legal claims of Gertrude Harbison against Edward W. Harbison.

An entry may be drawn accordingly.

*Judgment accordingly.*

CRAWFORD, P. J., and SHERER, J., concur.